IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2015

## MICHAEL ANTONIO DODSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009A829     Steve R. Dozier, Judge**

_____

**No. M2014-00768-CCA-R3-PC – Filed July 28, 2015**

_____

Petitioner, Michael A. Dodson, entered open pleas of guilty in the Davidson County Criminal Court to one count of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a firearm during the commission of a felony. Following a sentencing hearing, the trial court imposed a mixture of concurrent and consecutive sentences which resulted in an effective sentence of 86 years at 100% service. The judgments were affirmed on appeal. *State v. Michael Antonio Dodson*, No. M2010-01047-CCA-R3-CD, 2011 WL 5831759 (Tenn. Crim. App. Nov. 21, 2011), perm. app. denied (Tenn. April 20, 2012). He filed a timely petition for post-conviction relief. Following an evidentiary hearing, the post-conviction court denied relief and dismissed the petition. Petitioner has timely appealed, and following a review of the record and the briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

William E. Griffith, Nashville, Tennessee, for the Appellant, Michael Antonio Dodson.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The facts of the event which resulted in Petitioner's convictions are set forth in detail in this Court's opinion which affirmed the sentences imposed following

Petitioner's guilty pleas. *Id.* 2011 WL 5831759 at *1-3. There is no need to repeat all of those facts in this opinion. It is sufficient to note that Petitioner and two other men committed a home invasion of a boyfriend's and girlfriend's residence while the couple was at home. The woman was repeatedly raped. Both victims were tied up and blindfolded after being forced into an office inside the residence. A gun was fired and multiple threats of killing the victims were made during the ordeal which also included ransacking the home and taking personal property. After raping the woman, Petitioner and his co-defendants looked for, but could not find, bleach to "clean" the raped victim. They settled for taking the victim to a bathroom and pouring floor cleaner all over her. Petitioner has presented two grounds for relief in this appeal: (1) trial counsel rendered ineffective assistance of counsel by failing to present evidence of Petitioner's "mental health issues" at the sentencing hearing; and (2) the guilty pleas were not knowingly and voluntarily entered. The entire argument in his brief as to the first issue (other than citations to authorities) is as follows:

> [Petitioner] testified that his attorney did not present evidence at the sentencing hearing regarding his mental health issues. Specifically, trial counsel failed to mention that [Petitioner] had been diagnosed with having ADHD [attention deficit hyperactivity disorder] and [split] personality. [Petitioner] testified that had counsel done so, [Petitioner] would submit that the trial court could have imposed a lesser sentence than the one received as it could have been used as a mitigating factor.

> . . .

> Based on the proof, [trial counsel's] failure to present [evidence] at the sentencing hearing regarding [Petitioner's] mental health issues substantially impaired [Petitioner's] Sixth Amendment Right to effective assistance of counsel. Trial counsel should have presented such evidence. Thus, trial counsel's failure to do so deprived [Petitioner] of effective assistance of counsel.

> [Petitioner] would submit that this error denied him his Sixth Amendment Right to effective assistance of counsel by clear and [convincing] evidence and he is entitled to relief based on this issue.

As to the second issue, Petitioner's argument on appeal (again excluding his citations to authorities) is as follows:

> [Petitioner] testified that he was not fully aware of the consequences of his plea. [Petitioner] testified that after conversations

2

with his trial attorney, he thought he would only get 40 years at the sentencing hearing. As it turned out, [Petitioner] received 86 years. [Petitioner] testified that he did not realize he could get this much time after a sentencing hearing. [Petitioner] testified that he had maintained he wanted a jury trial in this case. He did not want to enter the guilty plea. Had [Petitioner] known that he could have received as lengthy a sentence as he did, he would not have entered the plea and instead would have pursued the jury trial.

. . .

Based on the proof, [trial counsel's] failure to explain to [Petitioner] that he could get as much time as he did makes [Petitioner's] plea not knowingly and voluntarily entered. [Petitioner] did not fully understand his range of punishment and understood his sentence to be no more than 40 years as a possible sentence. Thus, trial counsel's actions deprived [Petitioner] of entering a knowing and voluntarily entered plea. [Petitioner] would submit that based on this, he is entitled to relief based on this issue.

We will confine our summary of the proof developed at the post-conviction hearing to the specific and limited issues and arguments made by Petitioner in his brief. Petitioner and trial counsel were the only witnesses who testified at the evidentiary hearing. The only two exhibits admitted were (1) trial counsel's time sheet for work done in Petitioner's cases and (2) the transcript of the hearing when the guilty pleas were entered. There was no evidence independent of Petitioner's testimony presented in support of Petitioner's assertion that trial counsel should have presented evidence of Petitioner's "mental health issues" at the sentencing hearing.

Petitioner testified that when he ultimately entered his guilty pleas after the trial had begun, he believed that he would be sentenced to serve 40 years, which the State had offered for a negotiated plea agreement approximately two weeks before the trial began. Petitioner acknowledged that he had rejected the offer before the trial began. He testified that during a break in the trial, trial counsel told him "things wasn't looking right" and Petitioner should consider pleading guilty with the trial court to impose the sentences. Petitioner testified that trial counsel told him during the break in the trial that he would be sentenced to 40 years if he entered the guilty pleas. Petitioner claimed that he did not understand that he could receive consecutive sentencing. He clearly stated that if he had known he could receive consecutive sentencing and more than a 40-year effective sentence, he would have continued with his trial.

3

Petitioner testified that prior to the time of the sentencing hearing, he had been diagnosed with "ADHD and split-personality." Petitioner stated that he informed trial counsel of the mental health diagnoses. When asked what trial counsel's response to this was, Petitioner testified, "[w]e talked about it and he had told me I guess it wasn't credibility used though [sic], but other than that, I don't know."

Petitioner unequivocally testified that his mental health issues were not addressed at the sentencing hearing. He added that he would have received fewer years to serve if the mental health issues had been presented. However, Petitioner failed to elaborate on how or why the effective sentence would have been less. Petitioner stated that his ADHD led to some of his juvenile delinquent behavior. Petitioner asserted that his delinquent acts were used to increase the effective sentence imposed on him. Petitioner testified that he had been hospitalized as a result of his mental health issues and had told this fact to trial counsel. Petitioner also added that trial counsel failed to arrange for a mental health evaluation of Petitioner.

Trial counsel testified that he became licensed to practice law in 2002, which was twelve years prior to the entry of the guilty pleas by Petitioner. At the time he represented Petitioner, about 70-75% of trial counsel's practice was dedicated to criminal defense work. Trial counsel testified that he met with Petitioner several times. They discussed the potential punishment Petitioner was facing, including the possibility of consecutive sentencing. Trial counsel's testimony indicated that he believed that Petitioner fully understood the charges, the court proceedings, and everything else in his communications with trial counsel. Trial counsel was aware that Petitioner had previously been diagnosed with ADHD and that Petitioner "maybe [had] some mental health treatment programs earlier." However, since Petitioner gave no indication that he failed to understand and comprehend what was happening in his case, trial counsel saw no need to cause Petitioner to be referred for a mental health evaluation. Trial counsel testified that Petitioner "always was certainly coherent in our conversations, was aware, asked appropriate questions."

Regarding plea negotiations prior to trial, Petitioner declined to accept the State's offer for Petitioner to receive an effective sentence of 40 years. Petitioner also refused to allow trial counsel to make counter-offers to the State for a sentence of 30 or 35 years and even a sentence of 20 years. Based upon conversations with the prosecutor, trial counsel knew that any counter-offer less than 20 years would be "pointless." The State's offer to settle the case with an effective sentence of 40 years was withdrawn the Sunday immediately preceding the trial date.

A juror suddenly got sick during the testimony of the State's first witness in Petitioner's trial. During the resulting break in the trial proceedings, trial counsel

4

discussed with Petitioner the possibility of entering guilty pleas on some sort of negotiated agreement. The prosecutor refused to again offer a guaranteed effective sentence of 40 years. However, the prosecutor did agree that if both Petitioner and his co-defendant wanted to enter guilty pleas, the State would agree to dismissal of "several of the more serious felonies . . . from the indictment" and have a sentencing hearing for the charges to which guilty pleas would be entered.

Trial counsel testified that he never promised Petitioner that his effective sentence would not be more than 40 years. Trial counsel conveyed to Petitioner that with dismissal of some of the charges, he was avoiding up to 50 years' confinement if he was convicted by the jury of all charges. In addition, trial counsel told Petitioner that if he went forward with the guilty pleas and kept the victims from testifying further, "perhaps we would have a better chance of convincing the Court at [the] sentencing hearing to give [Petitioner] a lesser sentence." At the sentencing hearing, the pre-sentence report documented the fact that Petitioner had "a prior ADHD diagnosis and anger management issues."

Trial counsel testified that prior to Petitioner entering his guilty pleas, trial counsel informed him that the judge would determine the length of each sentence and whether sentences would be served concurrently or consecutively.

The post-conviction court entered an order dismissing the post-conviction petition. Regarding Petitioner's claim that he received ineffective assistance of counsel because trial counsel failed to have Petitioner evaluated for mental health issues, the post-conviction court determined that,

> The Court finds that [Petitioner's] mental health issues were addressed at the sentencing hearing and were considered considerably less significant than the applicable enhancing factors. There was no proof presented at the post-conviction hearing in regard to competency or issues affecting [Petitioner's] understanding of the guilty plea. Further, the Court finds that [Petitioner] was informed and had sufficient knowledge of the nature and consequences of the plea and that he voluntarily and intelligently chose to enter the guilty plea as evidenced by the transcript of the plea (Exhibit 1). [Petitioner] has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore [Petitioner] is not entitled to relief on this issue.

As to the other basis for relief argued by Petitioner, the post-conviction court concluded as follows:

Petitioner alleges that he was coerced into entering the plea and that he did not understand the nature and consequences of the plea. At the hearing, [Petitioner] acknowledged that he agreed to plead guilty. The Court accredits the testimony of trial counsel that he explained and went over the plea in detail with [Petitioner]. Further, as the Court of Criminal Appeals noted, at the guilty plea hearing, [Petitioner] agreed with the State's recitation of the facts, which included a description of the egregious nature of the crimes. *State v. Michael Dodson*, M2010-01047-CCA-R3-CD, [20] 11 [WL 5831759] (Tenn. Crim. App. Nov. 21, 2011). The Court finds that [Petitioner] was not coerced into the guilty plea. He was informed and had sufficient knowledge of the nature and consequences of the plea and that he voluntarily and intelligently chose to enter the guilty plea as evidenced by the transcript of the plea (Exhibit 1). [Petitioner] has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore [Petitioner] is not entitled to relief on this issue.

## ANALYSIS

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the post-conviction court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

6

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *U.S. v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy

and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

Because Petitioner pleaded guilty, he is not entitled to post-conviction relief if he fails to demonstrate "that there is a reasonable probability that, but for [trial] counsel's errors, he would not have pleaded guilty and would have insisted on [continuing with his] trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Furthermore, in order to show that prejudice exists because trial counsel failed to call certain witnesses or present certain evidence and thereby rendered ineffective assistance of counsel, Petitioner should present such testimony and other evidence at the post-conviction evidentiary hearing. *Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996).

We have carefully reviewed the record in this case. The transcript of the guilty plea hearing fully supports dismissal of Petitioner's claims, as does the testimony of trial counsel, whose testimony was accredited by the post-conviction court. As noted by the post-conviction court, Petitioner failed to present evidence of Petitioner's mental competency at the time of the trial and guilty pleas.

The evidence at the post-conviction hearing did not preponderate against the post-conviction court's judgment. Accordingly, the judgment is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE